May it please the court. Counsel. My name is Jeffrey D. Kearney and I represent appellant slash cross-appellee Eric Williams in this appeal. On appeal we seek reversal of his convictions on the basis that various motions to suppress should have been granted on the basis that there was insufficiency of evidence for one of his possession counts and sort of in the alternative on that count of insufficiency of the evidence that the district court erred in not providing an instruction that spoke to the higher level of proof necessary for construction cases in a place that is not the defendant's residence. So first and of course on cross-appeal we are seeking to if the court decides to preserve the convictions that the sentence that was imposed stay in place. So first looking to the motions to suppress. There were two traffic stops in this case. One in March of 2015 and one in November of 2015. Both of them were based on sort of a line straddling theory that Mr. Williams had crossed a line while driving. In one instance it was more the fog line that he had encroached upon. In the other it was getting towards left of center. And in neither case, in neither stop. But there was also a probable cause alternative as to the November stop, wasn't there? Due to, how do you mean, Your Honor? That there was probable cause to stop him because he was traveling after the wire, wasn't that wire tapped calls? Yes, Your Honor. And the traffic officer was directed to stop him. Yes, Your Honor. So the November stop, candidly, is on stronger ground for several reasons. Which led me to wonder, since they are completely distinct incidents, what was introduced from the March stop and is there a harmless error issue lurking as to that? Assuming we agree with you on the traffic stop ground arguments. My belief is that he was found guilty of possession with respect to that stop as well. And I'll check that during my time to be sure. But that's my recollection. I didn't pay attention to how many counts there were. But then there would be the possibility of only one count being reversed. Correct. And so that gets into a case. Our perspective is that this is a case where he was found guilty of multiple counts for multiple alleged drug transactions, as well as a conspiracy count, obviously. And that they work together in such a way that our belief is that if one is overturned, then vacating the whole conviction is called for. But we also understand that there are... That may be true. It just occurred to me in reflecting on the case. Thank you, John. It's something I've given some thought as well. Not that you need me to endorse your thought process. So moving to the motions to suppress. First is the March stop where he was driving around the Little Rock area and touched a line or maybe crossed over onto a line. And that was the basis for the stop. The government, although there was not actual citation to the Arkansas traffic code below, the government has cited Arkansas code section 2751-3021, which states that whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules in addition to all others consistent with this subchapter shall apply. And the kicker is that a vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that movement can be made with safety. So at the suppression hearing, there was testimony from multiple officers. And that testimony failed in a few ways to satisfy the standard to show that there was probable cause based on a violation of this statute. So first, in a general matter, and this has been held, and this is a statute whose form is familiar in traffic codes across the country. There are a few courts that have looked at statutes like this. And one issue that they've come up with is, for instance, it's not really clear what that means. It's not really clear when, from sort of the driving aspect of it, when that has been violated. Does it require fully going into another lane? Does it require just touching the line? Is there a durational aspect to it? The Arkansas Supreme Court or the Arkansas Appellate Courts have not really spoken clearly to that. And so there's an issue of there just being kind of a gap in terms of what driving technique is barred by this statute. I want to ask you about, I want to fast forward a little bit and ask you about, because I want to make sure you get to it, the inventory search. I always find it curious, I know our case law allows it, but I always find it curious that we allow officers to testify about a procedure that's written down. Now sometimes they're not written down, but we have testimony and we have no inventory sheet. And I'm wondering whether you have any idea, or whether it's part of the record, whether there was an inventory policy, a written inventory policy. And, you know, give me more on, you know, just give me your view on this, because I think it's actually not a close call, but I think it's one of the closest calls in the case, potentially. My belief is that the officer claimed that there was a written policy, but he didn't have it and he didn't have the sheet. And, of course, when asked to describe what he had actually found, all he listed was narcotics. So in Taylor, the case where the court found that the inventory search was insufficient, there were basically, you know, lots of valuable tools found in the vehicle. The officer wrote miscellaneous tools and the court held that that was not enough to show that a good faith inventory search had occurred. So the law of inventory search is a bit strange. It certainly, you know, results in the need to make credibility determinations, which, as suppression hearings go, they typically go a certain way, and this one did as well. But I think the court, you know, should also recall that the initial basis for this stop, you know, on the incident sheet, was that it was a probable cause stop, that it was a probable cause search. Two years later, it comes up for a suppression hearing and it's an inventory search. Again, it's an inventory search that is awfully close to deficient in the way that the one in Taylor was. Yeah, and I think there's a lot going on here that's troublesome. You have the non-written policy in the oral testimony. You have, as you say, the inventory sheet just shows the drugs they found. It shows that it was a probable cause search and not an inventory search. Do we have any cases like that? I know we've been pretty lenient on not striking down inventory searches. I'm just wondering what the best case for you would be in terms of, you know, advancing the cause, your client's cause. Right. And again, I didn't find – the case that I found that was closest was the Taylor case that I've referenced, which, you know, kind of has more general principles and things to look for to, you know, determine, you know, was this actually done? Was this actually a real inventory search? And again, there is an aspect to which it's just happened by, you know, the fact that the law says that they can come in and say that that's what they did. And they can come in and say that's what the policy was. And they can speak to the inventory insofar as they have it. But, you know, the officer didn't bring one. And again, when asked to describe what there was, you know, there was no description of anything but things that would, you know, lead to a drug conviction. What's hard about this, though, is I agree with you. I'm very skeptical of these. Our case law allows it. But then you have a credibility finding when you allow this. So you have the judge saying, I find it credible that you did an inventory search even though you wrote something else down. I find it credible that there's a written inventory policy. And we say credibility findings are really almost unreviewable on appeal. So what do we do with that? Yeah. Again, it's vexing. And but, you know, again, I think with the Taylor case, I mean the court said that they're, you know, kind of like with a sufficiency of the evidence argument, almost at all times the court will say that the fact that there was enough evidence for the jury means there was enough evidence for conviction. But there are times when it's not. And this is an instance where, you know, again, looking at previous case law, it's awfully similar to a case where the court held that it was not. Mr. Williams was alone in the car? Yes, he was alone in the car. And he was arrested? Yes, yes, yes, your Honor. So there's an inevitable discovery issue here. I mean, even if the inventory search was imperfectly done, the car was going to be impounded. And that means it's going to be searched at some point. Yes, sir. So, yeah, so certainly... And in these cases I've had before, that's always lurking. And sometimes it's even made an issue. Yes, your Honor. And certainly if all the bases for why the stop was deficient are rejected, then that is a common safety valve in these types of cases. That also, though, gets to the point of the... And my rebuttal time is coming up, so I'm just going to make this point very quickly. But to the issue of the frisk that turned into a search. The officer essentially put the burden on Mr. Williams to prove that it wasn't a weapon, you know, calling out sort of a metaphysical idea that anything could be a weapon almost. That's not what the plain field doctrine calls for. Again, there's certainly a lot of discretion. Certainly, you know, officers need to be able to protect themselves. But the fact that something could be a weapon means that anything that's in somebody's pocket could be pulled out on that basis. Because the officer feels, you know, if the officer's given carte blanche to search just to prove a negative. But I'm into my rebuttal time, so if there are no more questions right now, I'm going to take a seat. Very good. Ms. Gardner? Good morning. May it please the Court, I'm Anne Gardner, arguing for the United States. Just to clear up on the March traffic stop, it is a harmless error issue. What was seized from that car was approximately four grams of meth, a little bit of marijuana, some hydrocodone, some oxycodone. Even reversal of that count would not affect the conspiracy, would not affect the sentencing. Not any count? Not any count associated with March 2015. And it would not affect the overall conspiracy. No count was based on that seizure? The first two counts that he was charged with were based on March 15th. And so those could be overturned if you find that it was an improper stop. However, the quantity of methamphetamine at sentencing would not have been affected in one way, nor would the conspiracy, because there were two other separate and distinct incidents, one from 2015 and one from November 2015. Excuse me, September 2015 and November 2015. But that's not harmless error. I mean, I'm sure the defendant would like to have the two counts overturned. I mean, harmless, we usually think of harmless, maybe it doesn't affect the sentence, but we usually think of harmless as, you know, didn't get a count based on that, you know, or went into the overall calculation at sentencing, but there's no separate conviction. Sure. But overall, he was sentenced on the quantity of methamphetamine in the conspiracy. I mean, that's the bottom line. And four grams of methamphetamine would not have affected that. We submit that the Lane issue here is a plain error review. It was not raised at the initial suppression hearing. That the Hoy case is not... The what issue? Excuse me? The what issue? The Lane change issue was never argued. Oh, the statutory issue. It's a statutory issue, but it was never argued at the lower court. They argued credibility of the witnesses and that the judge did find both officers credible. McInnis, on the testimony that the Lane was crossed, we would go to U.S. v. Coney and U.S. v. Gordon, which do say that an objectively reasonable basis, even if a mistake of law, is PC for a traffic stop. As far as the pat-down, we would cite to the Hanlon and the Mohamed cases. Here, unless the officer has concluded that the object was not a weapon, they found it proper that they could go in to see if it was a weapon. What we have here is Mr. Williams repeatedly reaching for that front pocket of the hoodie, even when told to put his hands on the trunk of the car, repeatedly reaching. And that object was four golf ball size of hard methamphetamine. So you can imagine it's kind of like a cue ball. I mean, it's a large object. The officer testified repeatedly he did not know if it was something that could hurt him. He did not know it was drugs. And so he went in and pulled it out. And that has been held to be proper Terry search under Hanlon, under Mohamed, where the object was a threat to safety, had not been ruled out to be a weapon by the officer at the time that they searched. And under Terry, it's unreasonable to require police to take unnecessary risks at the side of the road when they're patting somebody who's making strange movements and reaching towards their pocket repeatedly. The inventory, we would go with the fact that it was inevitable discovery as well on this because the car was going to be impounded. It was not going to leave the side of the road. So you wouldn't even want us to decide the inventory search question. You would jump straight to inevitable discovery. We would cite to Lowe where there's no requirement to have a written policy at the hearing and that the judge did make a credibility determination and believed the officer on his testimony that the inventory search was conducted. There was an inventory and there was a policy at the Pulaski County Sheriff's Office that was a standard policy. Do you think this is a problem though? I mean, here you've got all the indicia of an inventory gone. You don't have a written inventory policy. You don't even have a written inventory. And then the sheet that he said actually said it was a probable cause search, not an inventory. Now I realize the district court went that direction, but this one seems like a bridge a little further than the ones we've approved before. Officers routinely do mix up on their reports saying I did a PC search. They know what the law is, but they're not legal scholars. And to them, a PC search, an inventory search, it physically is the same thing. But the fact of the matter is that an inventory would have been done of that car. And so it would have been done before it got on the record. So whether he called it PC or inventory kind of goes to the inevitable discovery. We would distinguish the two. And then you get into whether the inventory search at the impoundment lot would have been as thorough as the search on the scene that the officer thought was for PC. Is PC justified? It's true, Your Honor, but I believe in this case that the drugs were found in the door of the car and in the console. So they weren't secreted in a compartment or something like that. They would have been readily inventoried. In the Taylor case as well, the additional factor that went to the inventory was that the officer admitted the reason I stopped and arrested this person was to do an inventory because I thought there was evidence in the car. And they admitted that on the record and the court found that that was the extra piece that they needed in Taylor. If I may, I'd like to skip to the cross appeal, if it pleases the court. On the cross appeal, the government is appealing because of a procedural error. We just raised the fact that the judge actually just made an error in how she viewed Mr. Larry and Mr. Williams based on criminal history and based on the quantity of drugs. In her sentencing, she said... It was a comment. It wasn't a procedural error. You're saying she made a wrong comment and therefore we get a new sentence. That's not procedural error. No, Your Honor, but let me... You've got substantive unreasonableness, period, in my view. Okay. If you look at the drug quantity, though, without considering the reduction for cooperation of Mr. Larry. Mr. Larry was at a base offense level of 32 on the drugs. Mr. Williams was at a base offense level of 34. Now that is comparable. They were both at a criminal history six. Mr. Larry, based on 14 points. Mr. Williams, based on not two priors that made him a career offender, but four. How many Eighth Circuit cases did you find where we say a methodical comparison of similar co-defendants, even co-defendants, is not constitutionally required or reviewable by us on appeal? It's not constitutionally... We don't require it. I'm sorry? We don't require it. Most district judges pay some attention to that and I think they should. But we don't... It's not reversible error. Even if they don't do it or if they do it and come to their own views as to what's proportional. Yes, Your Honor. The only thing I would put on the record is where the government's view that the error was made in the comparison of trying to not have disparities between defendants. Well, and that's actually why I think that your argument may have some merit here. Because I agree with Judge Loken that an offhand remark doesn't get you there. We have a lot of cases on that. But it appeared to me that the district judge was saying, I'm very uncomfortable having two defendants who have similar criminal histories getting widely different sentences based on the guidelines. So there's some indicia here, and maybe I'm wrong about this, but there's some indicia here that this was a major reason why she gave the sentence that she did. I would agree, Your Honor. And if I may, if you take Mr. Larry based on the same factors that Mr. Williams was sentenced on, he was at a level 32, criminal history 6. His range was 210 to 262. 210 to 262. He only got to 120 months because he got acceptance of responsibility for cooperating. He made a statement to the government and the government agreed with the defense to jointly recommend 120 months because of his cooperation. So he would have been at 210 to 262, not 120. So basically, when she started at 120 with Mr. Williams, Mr. Williams got the benefit of Mr. Larry's cooperation. Mr. Williams never cooperated. He never admitted responsibility. It's sentencing, all of a sudden it was about a constitutional issue, but we had four days of trial where he contested every single fact and never admitted to anything and never took responsibility for anything at trial. So I just want to understand. So I think that the, and tell me if I'm wrong, I have a little note here, was the calculated offense level for Mr. Larry 29 in the end because of the acceptance of responsibility? 29 in the end. And the district judge said it was high 30s? Is that right? She was going on the amount of drugs and the amount of drugs was 32. Okay. And the amount of drugs for Williams was 34. So that is comparable. But he got down to 120 months solely because of cooperation. Because if he hadn't cooperated at all, he would have been at 210 to 262. And that's where we think the disparity came from is that she really used, thinking, she used his final sentence, which was 120 months based on a variance agreed to by the parties. So it's less about the offense level and it's more about, it's more about the range in the government's view. Yes, Your Honor. But she didn't really talk about the range. See, now I'm, now it's kind of pushing me back to what Judge Loken was saying, which is her statement was about the offense level. She said it was in the 30s and it was really in the high 20s. And if that's the problem, that's one thing. But if the problem is the range, the disparate ranges, I'm not so sure that's a problem because that's not what she was talking about. I think she was trying to compare the fact that the 10-year sentence was the highest sentence had been given in the case. It was given to one other defendant who had zero criminal history and had a 32 plus two for a firearm. But that person got 120 months as well. So I think the 360 to life was giving her pause and she wanted to do something for the highest end of the, highest end of the sentencing. But this particular defendant was not similarly situated to Mr. Larry. Yeah, as you probably know, about 20 years ago, I remanded, I wrote an opinion remanding on this type of issue in a much, much more, much different, much more extreme case. Lazarski. And our colleagues since then have never overruled it, but they have limited it to facts. So far on the facts that it's basically non-law. And that's what you're arguing. Is Lazarski in a less extreme context? And so, you know, if our panel took that argument, we'd hear about it. I understand, Your Honor. I believe it was the government's responsibility to bring this issue forward just because we felt that Mr. Williams was not a similarly situated defendant because of his lengthy and violent history that Mr. Larry did not have. And that the 15 year sentence was even less than the defense had asked for. They asked for 15 to 20 years. And she gave the bottom end of the range that the defense thought was reasonable. What is the relevance of the fact that the government alerted the judge to the error? The judge, I think, went back into chambers, thought about it a little while, came out and imposed the exact same sentence. I can't speak to what she thought about in chambers. She had kind of already made her decision on the record and didn't change it. But the government did make its arguments and did object at the time. Did the judge give further explanation after reappearing in the courtroom? No. It was the same explanation about Mr. Larry got 120 months. You know, I'm going to go somewhere up to 15. And so that's kind of where we were. Does that, you know, not to beat a dead horse, so to speak, but does that undermine your argument here that the district judge relied on what you think is a clearly erroneous fact because you brought it to the district judge's attention. And again, it shows that the district judge was concerned about the range of the other defendants, not the offense level where the misstatement may have occurred. And I agree with you there may have been a misstatement about the offense level. I agree. But if the real concern was the range, that kind of undermines the government's argument. Yes, I don't. It's my feeling, being at the hearing, that I don't think the judge fully realized what the overall exposure to Mr. Larry was originally and that the 120 months was because of cooperation only. And he would have been at a much higher sentence overall in comparative to Mr. Williams had it not been for cooperation. I think that's the bottom line on that. I have just about a minute here. Is there another question that the court would like me to address in particular? I would just say for the November evidence that it was not a constructive possession. It was actual possession. The Eighth Circuit instruction was given, which is sufficient. There was circumstantial evidence between witnesses, T3 recordings that were played, that Mr. Williams actually possessed that methamphetamine when he ran into the house and then hid it in the bedroom. So we submit that there was not an error in the jury instruction. And there was sufficient evidence on that count. There was an additional house search in September 2015 that was not challenged. There was 272 grams of methamphetamine that came out of that search. So that would have affected the sentencing range and the conspiracy as well as the November. And there was additional evidence corroborating. What issue does that address? Drug quantity is not up on appeal. No, but it goes to the... It's not contested. I don't understand where you're... It goes to the overall conspiracy that the defendant was asking for the case to be completely overturned. There was sufficient evidence between September and November in drug quantity to meet what was charged in the conspiracy count, even without the March stop. That's my point, Your Honor. So he doesn't get a new trial if all of the suppression, if the entire suppression motion should have been granted? No, Your Honor. It is an absolute distinct issue from the other two in the case. But it's not an issue on appeal, I don't think. I'm sorry. I didn't follow that. The harmless error issue has to do with suppression. There's not a free... Oh, I see. Yeah, there's a freestanding insufficient evidence, but all right. Thank you, Your Honor. For rebuttal, Mr. Kearney? Yes, Your Honor. So briefly, to touch on a couple of points that were raised by the government. So first off, with respect to the reasonable mistake of law, to the extent that even if the court agrees with me on the interpretation of the lane straddling statute in Hoey, that this was a reasonable mistake of law. The cases cited by the government specifically, there is the case about the trailer, and that dealt with the trailer, and the question was whether it was built before or after 1973, and therefore whether there were certain requirements as to the brake lighting system. In this case, we have an Arkansas Court of Appeals case that at the time of the stop was almost a decade and a half old, and again, a clear statute that has these requirements to it. So this isn't one of those close calls where an officer has no choice but to kind of throw his hands up and curse the fact that he doesn't have a law book on his person. With respect to Hanlon and Muhammad, the cases where the court did find that a seizure was proper based on the possibility of a weapon, in those cases, both officers articulated something for the court to state that there was some good faith belief that there was a weapon in there such as a pocket knife. In this case, again, it was just, well, anything could be a weapon, was essentially the rejoinder of the officer. To get to sentencing, so first off, the district court took testimony from Mr. Williams, allowed extensive argument from the parties, did take a couple of recesses to give this case thought, and cited multiple factors, and came to the sentence that it came to. This was a conspiracy case with seven, eight, nine defendants, somewhere around there, where she presided over them. She had seen the indictments involved. She had seen, for instance, Mr. Larry and Mr. Williams go from charged with the same amount of counts to one end up cooperating and have one count, to one not cooperate and have all of a sudden he has more counts on him. She was able to kind of look, I mean, she saw that, for instance, they were both named with the lead conspirator at the top of the, in the first count of the indictment as kind of that highest level of responsibility. You know, she observed him over about four years of, you know, he changed counsel a few times, he'd been in front of her for various motions, again, a multi-day jury trial, and then the sentencing hearing. So the court looked at the history and characteristics of Mr. Williams and looked at what his needs were and determined that this was a reasonable sentence. Additionally, similarly situated, to confine it to, to confine it to, I mean, first of all, the court didn't say these folks are the exact same. The court essentially said, Mr. Williams, they're alike insofar as they are, but Mr. Williams is clearly worse. So the range reflected that and the ultimate sentence reflected that. He got the highest sentence of all the, of all the co-defendants. So to, you know, use that as something of a, of a starting point while recognizing inherently that he's worse and then delivering a harsher sentence does not, does not clearly erroneously satisfy. Very good. Thank you, counsel. Sure. The case has been well, well briefed and argued and we will take it under advisement. Thanks, y'all.